## U. F. JOHN v. K. T. JOHN.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHUMBER-
LAND COUNTY.

Argued May 23, 1888—Decided October 1, 1888.

1. One of two co-executors claiming an equal share of commissions allowed in separate accounts duly confirmed by the Orphans' Court, under an express agreement made therefor when the trust was accepted, evidence on the part of the defendant that he did much the greater part of the business is inadmissible.

2. The measure of the compensation for the whole services, not only as between the executors and others interested but as between themselves, was fixed by the accounts, and as the accounts were separately stated, they were prima facie entitled after confirmation as was set forth therein, respectively.

3. Responsibility incurred in pursuance of such an agreement is a sufficient consideration for its support, and whether there was such an agreement upon such consideration was, under the evidence in this case, a question of fact to be submitted to the jury.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 101 January Term 1888, Sup. Ct.; court below, No. 296 May Term 1883, C. P.

On April 5, 1883, an action in assumpsit was brought by Kersey T. John against Ulysses F. John, to recover one half of the commissions allowed in the settlement of their accounts as the executors of the will of their father, Samuel John, deceased. The defendant pleaded, non assumpsit, payment, payment with leave.

At the trial on October 19, 1887, there were but two witnesses examined, the plaintiff and defendant, each in his own behalf, and from their testimony and from the records put in evidence it was made to appear that Samuel John died on July 23, 1877, testate, and on August 6, 1877, letters testamentary upon his estate were issued to the plaintiff and defendant jointly. The accounts, and there were a number of them, were settled and filed separately. In the first accounts

settled by each, the amount of commissions allowed upon the credit side was divided equally to the two accountants; after that, disputes arose and each in his separate account had credit for the commissions claimed by himself.

K. T. John, examined in his own behalf:

Q. Go on and state what your agreement was and when it was made?

A. Right after my father's death we went into his office and commenced sorting the papers to get ready for the appraisement, and then we made an agreement that each one of us should have one half of the commissions; that I should have one half of what U. F. John collected, and he should have one half of what I collected, as commissions. When we filed our first accounts we divided it up in that way; after that there was a dispute about it but I couldn't state the time, but after the first accounts were filed awhile, how long after I can't tell, he refused to give me the half.

After the further examination of the witness, and the production of the records of the accounts confirmed in the Orphans' Court, and other record evidence, the plaintiff rested.

U. F. John, called in his own behalf:

Defendant's counsel propose to ask the witness what proportion of the work he performed as executor of his father's estate: This for the purpose of showing that the witness did more work in the settlement of said estate than his co-executor, the plaintiff in this case, and is therefore entitled to more compensation; also as having a bearing on the question of whether there was a contract between the two executors to share equally between them the percentage accruing in the settlement of their father's estate.

Plaintiff's counsel object to the evidence offered, that it is irrelevant and immaterial, the matter proposed to be inquired about having been adjusted between them by the Orphans' Court.

By the court: Of course, whether this was an improvident contract or not would have some bearing on the question of whether the parties made it; but whether it was an improvident contract or not must be determined, not by introducing evidence on the trial as to how much more the witness's services were worth than those of his co-executor, but of how

much the Orphans' Court has adjudicated they were worth
more than those of his co-executor.

We sustain the objection; the evidence is rejected.[1]

This offer was then made:

Defendant's counsel propose to prove by the witness on the
stand, and by the papers in the case, that he, as one of the
executors of Samuel John, deceased, performed nine tenths of
the services in settling up the estate of said deceased; that the
compensation allowed him by the Orphans' Court was less
than the proportion he was entitled to by comparing the ser-
vices rendered by him with his co-executor's services in set-
tling said estate: This for the purpose of showing, (1) As
between the parties to this suit, if the plaintiff is entitled to
recover at all, what amount his services would be worth and
what he ought to recover from the defendant; (2) As bearing
upon the question of whether there was any contract between
the plaintiff and defendant, as stated by the plaintiff on the
stand, providing for the equal division of the compensation.

To this offer it was objected, (1) that the compensation
allowed to the defendant had been adjudicated by the Orphans'
Court; (2) the plaintiff was entitled to recover by reason of
the special agreement made; (3) the plaintiff had been enti-
tled to have one half the assets to administer upon them, and
if deprived thereof, his right to receive one half the commis-
sions remained; (4) the agreement being a valid one, the
amount of services rendered was immaterial.

By the court: The evidence is rejected.[2]

The defendant denied the agreement for the equal division
of commissions testified to by the plaintiff.

The facts appear more fully in the opinion of the court.

In the charge to the jury, SITTSER, P. J., 44th district, the
facts were submitted to the jury, the points being answered as
follows:

The plaintiff's counsel respectfully ask the court to charge
the jury as follows:

1. If two be appointed executors of an estate and a mutual
agreement is entered into between them, after they are duly
qualified to act, that each will divide equally with the other
all commissions allowed on the settlement of their accounts as

Charge of Court below.

executors respectively, and they afterwards proceed and file partial accounts in which they respectively credit themselves and are allowed credits for commissions, and by the same accounts it appears that one half of such commissions are credited to each of such executors respectively, and it appears that the one executor then and thereafter obtains control of a larger proportion of the estate than the other, although the latter demands and offers to receive and administer his proportion of the assets, and that afterwards, the executor having control of a major portion of the estate, files successive accounts in which he claimed and is allowed commissions as accountant without indicating in said account that one half of said commissions belongs to his co-executor in pursuance of such agreement, in an action of assumpsit by the latter, the co-executor, against said accountant to recover one half of said commissions, in pursuance of such agreement, the plaintiff would be entitled to recover against his co-executor for such one half of all commissions allowed the defendant, with interest thereon, from the time of filing said accounts and crediting himself with such commissions.

Answer: This point is affirmed.[3]

The defendant's counsel ask the court to charge the jury as follows:

1. That even if the jury believe there was such a contract as alleged on the part of the plaintiff, it was a voluntary promise without consideration, and cannot be enforced at law.

Answer: This point we do not affirm.[4]

2. To establish a contract such as alleged by the plaintiff in this case, the unsupported evidence of the plaintiff is not sufficient, and the only evidence of the alleged contract in this case is the testimony of the plaintiff on the one side, and the denial of the defendant on the other, and there can be no recovery.

Answer: We do not affirm this point, but we say it is a question for you to determine as to which of these parties you will believe.[5]

3. If the jury believe there was such a contract, as testified to by Kersey T. John, yet subsequently, if he failed to carry out his contract on his part and interfered with the defendant in the administration of the estate, he would not be entitled to recover.

Answer: This point we do not affirm, because he had a right to interfere with the administration of the estate, and if he believed that his co-executor, who filed a separate account, was charging more commissions and more for his services than was justly due him, he had a right to except to it, and, if he did, he interfered with no agreement which they have made to divide the commissions equally between them. Whether they made such an agreement is, of course, a question for you, and on that branch of the case the court gives you no instruction whatever, but leaves the whole question to you to determine under the evidence in the case.

4. That the alleged contract, being a voluntary promise on the part of the defendant, even if made, could be rescinded by him at any time.

Answer: We do not affirm this point.[6]

The verdict of the jury was in favor of the plaintiff for $1,364.93. Judgment being entered, the defendant took this writ and assigned for error:

1, 2. The refusal of the defendant's offers.[1][2]

3. The answer to the plaintiff's point.[3]

4–6. The answers to the defendant's points.[4 to 6]

*Mr. S. P. Wolverton*, for the plaintiff in error:

1. The evidence offered was important to the defendant, because it would have tended to show, if he had performed nine tenths of the labor in the settlement of the estate, that the contract alleged was unreasonable and improbable and to contradict the plaintiff in his intention alleging such contract. Besides, it would have shown that, in equity at least, the plaintiff was not entitled to one half the commissions. The following cases, it is submitted, show that the evidence should have been received: Wickersham's App., 64 Pa. 69; Adams's App., 47 Pa. 94; Walker's Est., 9 S. & R. 223; Nolen's Est., 1 Phila. 298; Davis's Est., 1 Phila. 360; Aston's Est., 5 Wh. 240; Montgomery's App., 86 Pa. 234; Twaddell's Est., 9 Phila. 318; McCausland's App., 38 Pa. 470; Scott on Int. Law, 552–4.

2. As this was a voluntary contract, without consideration, and as there was no evidence to support it except the testi-

mony of the plaintiff, positively denied by the defendant, the court should have instructed that, upon the unsupported testimony of the plaintiff, he was not entitled to recover. To enable the plaintiff to recover, it was necessary he should produce a preponderance of evidence to establish the contract: Ohlendorf v. Kanne (Md.), 6 Cent. R. 681 : " The evidence, however, in regard to the agreement was conflicting; the proof in support of it rested entirely upon the testimony of the appellee, and his testimony was in every particular flatly contradicted by that of the appellant. And, although it was within the province of the jury to believe the one and to disbelieve the other, yet the burden of proof was upon the appellee to establish the agreement by a preponderance of testimony, or, in other words, to prove it by evidence satisfactory to the jury."

*Mr. J. Nevin Hill* and *Mr. W. H. M. Oran* (with them *Mr. George Hill*), for the defendant in error :

1. The action was upon an express agreement, and the offers were to prove (1) a matter not in issue, to wit, the amount of each executor's services, and (2) that another court had erred in its decree apportioning the commissions as stated in the accounts themselves. The admission of the testimony would have been error: Wickersham's App., 64 Pa. 69; Walker's Est., 9 S. & R. 226 ; Aston's Est., 5 Wh. 240. The affirmance of the plaintiff's point merely gave the jury to understand that, if the evidence of plaintiff was believed, he was entitled in law to a verdict. The plaintiff's point was fairly proposed and properly ruled: Allegheny V. R. Co. v. Steele, 11 W. N. 113; Sweitzer v. Hummel, 3 S. & R. 228. Moreover, the refusal of the court to instruct the jury that the alleged contract was without consideration, and that the promise was a voluntary promise which could be rescinded at any time, notwithstanding the promissor had in his hands the fruits of the contract, was unquestionably right: Sweitzer v. Hummel, 3 S. & R. 228; Riegel v. Wilson, 60 Pa. 388; Bartley v. Williams, 66 Pa. 329; Brown v. Campbell, 1 S. & R. 176.

OPINION, MR. JUSTICE CLARK :

This action of assumpsit was. brought by Kersey T. John,

one of the executors of the last will and testament of Samuel John, late of Shamokin, deceased, against Ulysses F. John, his co-executor, to recover his equal share of the commissions charged in their several separate accounts filed and confirmed by the Orphans' Court, under an alleged agreement between them to this effect: The plaintiff, Kersey T. John, alleges that, after his father's death, and after the letters were issued, he had an agreement with his brother Ulysses, that in the settlement of the estate the commissions earned would be divided equally between them; that Kersey should have half of the commissions allowed to Ulysses, and that Ulysses should have half of the amount allowed to Kersey, in the adjudication of their accounts respectively. The existence of this agreement, which is positively asserted on the one side, and as positively denied on the other, depends wholly upon the testimony of the contending parties themselves, and the testimony of one is in direct contradiction of the other. In corroboration of the plaintiff, however, was the fact that the first account filed by Ulysses, and also the first and second accounts filed by Kersey, were stated in pursuance of the alleged agreement; for although the accounts were separate, yet there was an equal division of the commissions charged in each of them respectively, and in this form the accounts were confirmed; but in the second, supplementary, and final accounts filed by Ulysses, and in the final account filed by Kersey no such division is made.

The whole amount of commissions to which the executors are entitled has been adjudicated by the Orphans' Court, the total allowance on all the accounts being $3,892.64; of this sum Ulysses had in his hands $3,087.18 and Kersey $805.46. In the absence of any parol proof to a different effect, we think the parties were entitled, prima facie, according to the showing of their several and respective accounts; that is to say, Ulysses, upon his first account to $622.96, upon the second and supplementary account $397.01, upon the final account $1,444.25, and upon the first and second accounts filed by Kersey $207.53; in all $2,671.75. Upon the same basis Kersey was entitled, prima facie, on his first and second accounts to $207.53, on third account $390.40, and on Ulysses's first account $622.36; in all $1,220.89.

It is said that the court in the adjudication of the account

could not, and therefore did not, apportion the commissions between the executors; that the question for the court was simply what was a reasonable compensation for the whole services; and that the executors might settle and divide as they chose—that was their concern. However this may be, the measure of their compensation for the whole services, not only as between them and others interested, but as between themselves, was fixed by their accounts, and as their accounts were separately stated and filed, they were, prima facie, entitled after confirmation as set forth therein respectively; it is fair to assume that in these separate accounts each of the accountants claimed and received a proper credit. The whole question then was upon the existence of the alleged parol agreement to share the commissions equally. Whether or not there was any such agreement was of course for the jury; if there was, and letters testamentary were taken out and responsibility incurred in pursuance of that agreement, there was certainly a sufficient consideration to support it.

The defendant offered to show what proportion of the labor and responsibility had been performed or incurred by him in the settlement of the estate. This we think was not material to the issue. The plaintiff's claim was founded upon an express agreement; if that was established to the satisfaction of the jury, the plaintiff had a right to recover, otherwise not. It was of no consequence, therefore, what proportion of the work was done by either of the accountants; their compensation was fixed either by their accounts or by the agreement, if any existed. Nor could the testimony offered have any bearing upon the question whether or not the agreement was made. If it was made at all, it was made just after their father's death, and before any of the services were rendered; the matter contained in the offer could, therefore, have very slight. if any, tendency to contradict the plaintiff, or to show that the contract alleged was unreasonable or impracticable. Especially is this so, in view of the fact alleged by Kersey and not denied, that Ulysses took possession of all the papers and documents involved in the settlement of the estate, and refused, absolutely, to permit Kersey to have any access to them. Under such circumstances it would certainly be expected that Ulysses would make the larger share of the collections.

The burden of proof was on the plaintiff, but his testimony if believed was sufficient in law to entitle him to recover. The veracity of the witnesses and the conflict in the evidence was for the jury.

Judgment affirmed.